CENTRAL TRUST CO. OF NEW YORK *v.* WABASH, ST. L. & P. RY. CO. *et al.*, (PERRY *et al.*, Intervenors.)

*(Circuit Court, N. D. Illinois.* July 23, 1889.)

COMMON CARRIERS—BAGGAGE—LIABILITY FOR LOSS.

A common carrier which, by its agent, receives and checks as personal baggage a trunk containing jewelry. the agent knowing or having reason to believe that the trunk contains jewelry, and not wearing apparel, is liable for loss of the property to the same extent as if the trunk contained nothing but wearing apparel.

In Equity. Intervening petition of Perry Bros.

v.39F.no.8—27

*R. S. Tuthill* and *F. C. Hale*, for intervenors.
*G. B. Burnett*, for receivers.

GRESHAM, J. The intervenors, Perry Bros., are jobbers of jewelry and watches at Chicago. One of the firm, Arthur J. Perry, was at Springfield, Ill., with a trunk containing a stock of jewelry and watches, and, desiring to go to Petersburgh in the same state, bought a ticket for passage over one of the lines of the Wabash Railway, then in possession of Humphreys and Tutt, as receivers. The station agent, who had served as such at the same place for more than 11 years, checked the trunk, which weighed 250 pounds, to Petersburgh as ordinary personal baggage, charging 25 cents for overweight, 150 pounds being the amount allowed to a passenger. The nature and contents of the trunk were not expressly disclosed to the agent, and he made no inquiries upon that subject. The trunk was three feet by two and a half, iron-bound, weighed 250 pounds, and was known in the trade and to baggage-men as a jeweler's or commercial traveler's trunk. The evidence shows that the intervenors and other merchants of the same class, then and prior thereto sold their goods, in the main, directly from trunks transported from place to place over railroads, and that this road had, previously and frequently, checked and carried such trunks for the intervenors and others as personal baggage, but that the receivers no longer permitted such carriage. The train was wrecked before it reached Petersburgh, and the trunk and its contents were destroyed by fire. The accident was caused by a defective road-bed and rotten ties. The master to whom the case was referred reported that the trunk and its contents—watches and jewelry—were worth $8,227.42, for which amount he recommended an allowance, less $612, the value of the goods rescued from the wreck.

If the station agent did not know that the trunk contained jewelry, he had reason to believe it did. He received it knowing that Perry was not entitled to have it carried as personal baggage. The agent did not believe the trunk contained wearing apparel only. It is plain from the evidence that he recognized it as a jeweler's trunk, and that he understood it contained a stock of jewelry. He was not, therefore, deceived and the receivers were not defrauded. Having checked the trunk by their agent as personal baggage, knowing, or having reason to believe, that it contained jewelry, the receivers became bound to safely transport it to its destination, which they did not do, and they are liable for the damages that resulted from a breach of the contract. They sustained to the trunk and its contents the relation of a carrier, and they are liable for the property destroyed by their negligence, just as if the trunk had contained nothing but wearing apparel, or as if they had undertaken to carry it as freight. The exceptions to the master's verbose report are overruled, and a decree will be entered in favor of the intervenors for the amount found due them.